## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 1:20-cv-20543-Cannon

UNITED STATES EX REL. BRUCE JACOBS,

      Plaintiff,

                  v.

JP MORGAN CHASE BANK, N.A.,

      Defendant.

_____/

### DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................3

    I.     Jacobs' Prior Complaint..........................................................................................3

    II.    This Court's Dismissal Order .................................................................................4

    III.   Public Disclosures Regarding JPMC's Alleged Fraudulent Conduct......................4

    IV.   Jacobs' First Amended Complaint..........................................................................6

          A.    Allegations Regarding Noncompliance With Fannie and Freddie Guidelines ..............................................................................................6

          B.    Allegations Regarding JPMC's Supposed Fraudulent Conduct .................8

ARGUMENT ......................................................................................................................9

    I.     Jacobs' FAC Does Not Adequately Allege A FCA Violation..............................10

          A.    Standard of Review....................................................................................10

          B.    Jacobs Has Not Adequately Alleged, Plausibly or With Particularity, That JPMC Engaged In Any Fraudulent Conduct ....................................10

          C.    Jacobs Has Not Alleged With Particularity The Submission Of A False Claim Or A False Statement .........................................................13

          D.    Jacobs Has Not Alleged JPMC's Knowledge............................................14

    II.    The FCA's Public Disclosure Bar Requires Dismissal Of Jacobs' FAC...............15

          A.    The First Two *Cooper* Factors Are Satisfied.............................................16

          B.    Jacobs Is Not An "Original Source" Because The FAC Does Not "Materially Add" To The Publicly Disclosed Allegations ........................16

CONCLUSION....................................................................................................................19

## **TABLE OF AUTHORITIES**

**Page(s)**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................10

*Cooper v. Blue Cross & Blue Shield of Florida, Inc.*, 19 F.3d 562 (11th Cir. 1994) ...................16

*Corsello v. Lincare, Inc.*, 428 F.3d 1008 (11th Cir. 2005) ...........................................13

*Graham County Soil & Water Conservation District v. United States ex rel. Wilson*, 559 U.S. 280 (2010) ................................................................15

*LLP Mortgage Ltd. v. Cravero*, 851 So. 2d 897 (Fla. Dist. Ct. App. 2003) ...................................3

*Mizarro v. Home Depot, Inc.*, 544 F.3d 1230 ...........................................................13

*Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401 (2011) .............................15

*United States ex rel. Aquino v. University of Miami*, 250 F. Supp. 3d 1319 (S.D. Fla. 2017).......................................................................10, 11, 13

*United States ex rel. Bernier v. InfiLaw Corp.*, 311 F. Supp. 3d 1288 (M.D. Fla. 2018) ........................................................................18

*United States ex rel. Clausen v. Laboratory Corporation of America, Inc.*, 290 F.3d 1301 (11th Cir. 2002) ................................................................10

*United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783 (11th Cir. 2014) ......................10, 12

*United States ex rel. Gilbert v. Virginia College, LLC*, 305 F. Supp. 3d 1315 (N.D. Ala. 2018) ................................................................19

*United States ex rel. Lorona v. Infilaw Corp.*, 2019 WL 3778389 (M.D. Fla. 2019)...................19

*United States ex rel. v. Mortgage Investors Corp.*, 987 F.3d 1340 (11th Cir. 2021)....................15

*United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805 (11th Cir. 2015) ...............16, 17, 18

*United States ex rel. Payton v. Pediatric Services of America, Inc.*, 2017 WL 3910434 (S.D. Ga. Sept. 6, 2017)................................................................19

*Universal Health Services, Inc. v. United States*, 136 S. Ct. 1989 (2016)....................................14

*Urquilla-Diaz v. Kaplan University*, 780 F.3d 1039 (11th Cir. 2015)...........................................10

*Watts v. Flordia International University*, 495 F.3d 1289 (11th Cir. 2007).................................10

*Ziemba v. Cascade International, Inc.*, 256 F.3d 1194 (11th Cir. 2001)......................................13

**STATUTES**

12 U.S.C. § 1821 ..............................................................................................................................3

31 U.S.C.
    § 3729 ..........................................................................................................6, 7, 10, 14, 15
    § 3730 ..................................................................................................................16, 17

Fla. Stat.
    § 673.2031 ..................................................................................................................3
    § 673.3011 ..................................................................................................................3
    § 673.3081 ................................................................................................................12
    § 702.015 ....................................................................................................................3

JPMorgan Chase Bank, N.A. respectfully moves this Court to dismiss with prejudice Plaintiff-Relator Bruce Jacobs' First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6).  The FAC should be dismissed because (1) it fails to allege, plausibly or with particularity, that JPMC violated the False Claims Act, and (2) it is prohibited by the False Claims Act's public disclosure bar.

## INTRODUCTION

Washington Mutual Bank ("WaMu") was shut down on September 25, 2008.  The Federal Deposit Insurance Corporation ("FDIC") was named the receiver of WaMu, and JPMorgan Chase Bank, N.A. ("JPMC") purchased WaMu's residential mortgage loans and servicing rights from the FDIC.  In his prior Complaint, Plaintiff-Relator Bruce Jacobs ("Jacobs") alleged that JPMC engaged in fraudulent conduct with respect to the servicing of those WaMu loans.  Specifically, that Complaint alleged—with no factual support—that JPMC fraudulently endorsed promissory notes on WaMu loans after WaMu ceased to exist, and that those loans and the associated foreclosures resulted in JPMC submitting false claims to Fannie Mae and Freddie Mac, in violation of the federal False Claims Act ("FCA").  Jacobs attached to that Complaint a "representative sample" of claims that JPMC supposedly submitted to Fannie and Freddie.  This Court dismissed the Complaint because it did not allege with particularity that JPMC submitted any allegedly false claims to Fannie or Freddie.  With respect to the "representative sample" of supposedly false claims, the Court found that they included "no further detail about when or how these submissions were made or why each of them qualifies as a false claim."  D.E. 49 at 7

Jacobs' FAC does not solve for either of these two problems.  Admittedly, the FAC attempts to address the first issue, as it lists 14 "representative example" loans and purports to identify the claims made and payments that JPMC received from Fannie and Freddie as a result of servicing those loans.  But the information is so nonspecific that it does not come close to satisfying the Rule 9(b) particularity requirements.  Rather than provide particular information about specific claims associated with those 14 loans, Jacobs instead lists the *total payments* that JPMC purportedly received over a multi-year period, apparently on the theory that JPMC's entire servicing of the loan is fraudulent.  That is not an allegation with particularity.

More fundamentally, however, the FAC fails because it does not address the second deficiency identified by this Court—namely, it does not allege how these claims were false.

There are no allegations regarding how the promissory notes for these 14 loans were fraudulently endorsed, no allegations regarding how JPMC's servicing of these 14 loans violated any Fannie or Freddie guidelines, and no allegations regarding anything fraudulent or otherwise improper about the foreclosure proceedings associated with these 14 loans. The absence of such allegations is not surprising, because the FAC does not allege that Jacobs litigated any of these 14 foreclosure proceedings or that had he had *any* personal involvement with them. In fact, the only allegations about any of these 14 loans is that the promissory notes bear the signature of a former WaMu official.

This, then, is the entire premise of Jacobs' FAC: that *literally every* WaMu loan with an endorsement of a WaMu official is beset by fraud—that is, that JPMC endorsed the promissory note for every single WaMu loan, that the foreclosures associated with each of those loans was invalid, and that any claim for payment to Fannie and Freddie associated with a WaMu loan is, categorically, a false claim. This is a preposterous claim—one that the FAC does not allege, plausibly or with particularity. The FAC therefore should be dismissed, pursuant to Rule 8 and Rule 9(b), for failure to state a claim.

The FAC should be dismissed for another reason as well: the FCA's public disclosure bar requires it. Under the public disclosure bar, a complaint must be dismissed if the allegations have already been publicly disclosed, unless the relator is an "original source." To qualify as an original source, a relator must contribute information that materially adds to that which has already been disclosed. Eleventh Circuit case law is clear that a relator's allegations do not materially add when prior disclosures are sufficient to raise an inference of the same fraudulent conduct. And, here, those public disclosures are more than sufficient to do so—in fact, this Court has already taken judicial notice of two news media articles that allege that JPMC endorsed WaMu promissory notes after WaMu ceased to exist, that JPMC improperly relied on those promissory notes in foreclosure proceedings, and that JPMC's lawyers assisted with this fraudulent scheme. These allegations—which are disclosed in even more detail in an additional news media article of which the Court should also take judicial notice—are the same as those that Jacobs makes in his FAC. Therefore, because Jacobs does not materially add to the public disclosures and thus does not qualify as an original source, the FCA's public disclosure bar provides another ground for dismissal.

## BACKGROUND

### I.      Jacobs' Prior Complaint

On February 5, 2020, Bruce Jacobs, a mortgage foreclosure attorney in South Florida, filed a *qui tam* Complaint against JPMC, alleging that JPMC violated the FCA with respect to certain WaMu loans, which it had purchased from the FDIC after WaMu had failed and the FDIC acquired WaMu's assets.  D.E. 1.  On August 14, 2020, the government declined to intervene, D.E. 17, and a few days later the Complaint was unsealed and served on JPMC, D.E. 18.  JPMC filed a motion to dismiss the Complaint on November 9, 2020.  D.E. 30.

As JPMC highlighted in its motion to dismiss, multiple public sources—and dozens of homeowners in foreclosure proceedings—have alleged that JPMC engaged in fraudulent conduct with respect to WaMu loans.  *See* D.E. 30 at 3-6.  More specifically, those sources have alleged that JPMC improperly endorsed WaMu promissory notes after WaMu failed in September 2008, primarily using the endorsement stamp of former WaMu official Cynthia Riley, and then presented those promissory notes to courts in judicial foreclosure proceedings.[1]  *Id.*

Jacobs' prior Complaint alleged the same conduct.  He claimed that through litigating five cases involving WaMu loans he allegedly learned that, because JPMC could not identify the specific date that WaMu endorsed its promissory notes, this absence of evidence meant that JPMC must have fraudulently endorsed those notes after WAMU ceased to exist.  D.E. 8 ¶¶ 64-77.  Jacobs further alleged that JPMC's reliance on these promissory notes in foreclosure proceedings rendered the foreclosure titles unmarketable and that JPMC's claims to Fannie and Freddie associated with such loans were thus false claims, in violation of the FCA.  *Id.* ¶¶ 16, 29-

---

[1] The public allegations, like the allegations in Jacobs' FAC (and prior Complaint), are nonsensical, because there is no reason why JPMC, which acquired the WaMu loans from the FDIC, would need to apply WaMu endorsement stamps to these promissory notes.  *First*, under Florida law, a foreclosing party is "entitled to enforce [the note]" as a non-holder, Fla. Stat. § 673.3011(92), if it files with its complaint a certification that includes "copies of the note."  *Id.* § 702.015(4).  This means that JPMC could foreclose on the loans without an endorsed note. *Second*, if in fact the FDIC had sold or assigned notes to JPMC that were not properly endorsed, JPMC would have a statutory right to compel the FDIC to endorse the notes.  *Id.* § 673.2031(3). Third, the FDIC, as receiver of WAMU, acquired all "rights, titles, powers, and privileges" of WAMU.  12 U.S.C. § 1821(d)(2)(A)(i).  The FDIC therefore could enforce the notes without relying on any endorsement—and when the FDIC assigned the notes to JPMC, JPMC acquired those same rights.  *LLP Mortg. Ltd. v. Cravero*, 851 So. 2d 897, 898 (Fla. Dist. Ct. 2003) (citing the "rather universally followed proposition that an assignee stands in the shoes of the assignor and has all the rights enjoyed by the assignor").

30.  Jacobs attached to his Complaint a "representative sample" of 40 loans that he alleged served as the basis of a false claim to Fannie and Freddie.  *Id.* at Ex. A.  Jacobs did not allege that he litigated the foreclosure cases associated with any of these 40 loans, nor did he allege any further information about them to suggest fraud or any improper conduct.

## II.    This Court's Dismissal Order

On February 24, 2021, this Court dismissed Jacobs' prior Complaint for failure to state a claim.  The Court held that "[n]one of the allegations or appendices cited by Plaintiffs include nearly enough facts as to time, place, and substance to alert Defendants to the precise misconduct with which they are charged."  D.E. 49 at 6.  The Court held that Jacobs' Complaint did not allege the submission of any false claims with particularity—"there is no particular detail about what records or requests [the Complaint] is referencing, when they were submitted, and for what amount," *id.*—nor did it allege with particularity how such claims might be false. *Id.* at 7.  As for Jacobs' argument that he could rely on a "representative sample" of claims to allege a FCA violation, the Court noted, "[T]his argument misconstrues the problem with Plaintiff's Complaint.  The Complaint's deficiency is not that it does not include enough loans in its 'representative sample' at Appendix A.  The issue is that the chart of loans at Appendix A itself fails to include any particularized facts as to the submission of allegedly false claims."  *Id.*

Because the Court dismissed the Complaint for failure to state a claim, it did not address "the parties' arguments on FCA public disclosure grounds," but it "advised [Jacobs] that any allegations relevant to his purported status as an original source must reasonably identify what knowledge he has that is 'independent and materially adds' to the arguably previously disclosed allegations or transactions."  *Id.* at 8.

## III.    Public Disclosures Regarding JPMC's Alleged Fraudulent Conduct

As to those previously disclosed allegations, the Court took judicial notice of two articles on publicly available websites.  D.E. 48.  One article, from January 2014, entitled "Shenanigans Abound—WAMU'S Endorsement of the Notes," discloses the allegations that "[l]egal questions abound as the stamped blank endorsements on the WAMU … notes produced by JPMorgan Chase in countless foreclosure cases could not have been made nor authorized by [Cynthia] Riley," and that such notes are "a possible act of fraud on the Court in foreclosure lawsuits across America."  D.E. 30-1 at 3-6.  The second article, from June 2015, "JPMorgan Chase Quits 5 ½ Year Foreclosure Case," discloses the allegation that in a foreclosure case JPMC produced a

promissory note with no endorsement in 2009, then produced a promissory note with Cynthia Riley's signature in 2012, meaning that JPMC must have fraudulently endorsed the note at some point between 2009 and 2012—a time period after WaMu was closed and thus JPMC was in possession of the note.  *Id.* at 10-14.

Both articles, of which the Court has already taken judicial notice, disclose the same allegations that Jacobs made in his Complaint (and that he now makes in his FAC).  And as JPMC pointed out in its prior Motion to Dismiss, these articles are but two examples of near-identical (but unfounded) publicly disclosed allegations.  Mortgagors have made these allegations in foreclosure proceedings for years, *see* D.E. 30 at 5-6, and news media have disclosed them in detail.  In fact, one publicly available article from January 2020, "JPMorgan Chase Alert!  Can JPM-Chase Validate Your Mortgage?" —for which JPMC requests judicial notice in connection with this motion[2]—provides even more information regarding JPMC's supposed fraud.  The article describes how JPMC and its lawyers have allegedly engaged in a scheme to foreclose despite the problems with WaMu loans: "JPMorgan Chase acquired Washington Mutual's mortgage assets in 2008.  Little did they know that a decade later they would still be fighting costly foreclosure battles over them … Chase and their lawyers know most of these mortgages are unenforceable and are garbage.  They have their lawyers file the foreclosure anyway."  Cosgrove Decl., Ex. 3 at 1-2.  The article further details the allegation that JPMC fraudulently endorsed WaMu promissory notes using signature stamps of Cynthia Riley:

> MFI-Miami discovered JPMorgan Chase was hiding a dirty secret. They were stamping these Washington Mutual notes with the Cynthia Riley endorsement stamp between 2012 and 2014.  Several MFI-Miami clients had their 2009 or 2010 Washington Mutual foreclosure cases with no endorsement stamp suddenly withdrawn. Only to have them refiled in 2013 or 2014 with endorsed notes by Cynthia Riley.  JPMorgan Chase got really sloppy.  JPMorgan Chase began compulsively stamping almost every promissory note with Riley's endorsement stamp.  MFI-Miami has a file cabinet filled with foreclosure files containing Riley's stamp that weren't consummated until months or years after she left Washington Mutual.

*Id.* at 5.  And the article alleges that JPMC did the same with endorsement stamps bearing the signature of other former WAMU officials, including Jess Almanza:

---

[2] This article appears on the website *MFI Miami—Mortgage Fraud Investigation*.  This is the same website that includes the article "JPMorgan Chase Quits 5 ½ Year Foreclosure Case," of which this Court has already taken judicial notice.  *See* D.E. 48.

> JPMorgan Chase's compulsive use of Cynthia Riley's endorsement stamp was beginning to affect the bank's bottom line in 2015.  So what should they do?  JPM-Chase executives went into the basement storage room.  They searched through old Washington Mutual boxes and randomly dusted off the endorsement stamp of another former Washington Mutual VP.  This time, they picked former Vice President Jess Almanza … Almanza never went to work for JPM-Chase like Cynthia Riley.  It appears Almanza's endorsement stamp was used without his consent.

*Id.*

## IV.   Jacobs' First Amended Complaint

On March 20, 2021, Jacobs filed his corrected FAC.  D.E. 57 ("FAC").  The FAC's allegations regarding JPMC's supposedly fraudulent conduct are largely the same as in Jacobs' prior Complaint (and the same as in these public disclosures)—namely, he alleges that JPMC fraudulently endorsed WaMu promissory notes using the signature stamps of Cynthia Riley and others, that JPMC did so after WaMu ceased to exist, that JPMC relied on those notes in foreclosures proceedings, and that JPMC and its counsel engaged in a scheme to deceive courts regarding when those promissory notes were endorsed.  FAC ¶ ¶ 98-103.  The FAC further alleges that JPMC's fraudulent conduct meant that JPMC did not comply with Fannie and Freddie servicer requirements.  *Id.*  As a result of this noncompliance, the FAC contends, JPMC's claims for payment to Fannie and Freddie constituted a false claim on the government, and JPMC's statements that are material to those claims are false statements.  *Id.* ¶ ¶ 55, 64, 69.  The FAC asserts that JPMC is liable under an express and implied false certification theory, pursuant to 31 U.S.C. § 3729(a)(1)(A)-(B).  Further, the FAC alleges that because JPMC violated Fannie and Freddie guidelines, JPMC was required to repurchase noncompliant loans, FAC ¶ ¶ 25, 37, and that JPMC's false statements allowed JPMC to avoid this repurchasing obligation, thus making it liable under a reverse false claim theory, pursuant to 31 U.S.C. § 3729(a)(1)(G).  FAC ¶ ¶ 213-232.

### A.     Allegations Regarding Noncompliance With Fannie and Freddie Guidelines

The FAC spends 37 paragraphs outlining the servicing requirements on Fannie and Freddie loans.  *Id.* ¶ ¶ 9-45.  It then alleges that JPMC's conduct violated these requirements, but it is not clear which of the specific requirements JPMC supposedly violated or what specific alleged conduct violated which specific requirement.  Rather, the FAC summarily asserts that JPMC "knowingly and willfully failed to disclose its noncompliance with Fannie and Freddie guidelines and its breach of its servicing agreement," *id.* ¶ 65, and that "[t]hese undisclosed facts

constituted material breaches of JPMC's selling and servicing contracts as well as GSE guidelines," *id.* ¶ 66.  Therefore, the FAC claims, "JPMC filed annual certifications that contained several materially, false certifications," *id.* ¶ 67, and these "annual certifications were false and fraudulent because JPMC was not in compliance with Fannie and Freddie guidelines and because JPMC was in breach of its servicing agreement," *id* ¶ 68.

The FAC does not point to or attach any specific certifications that JPMC submitted to Fannie or Freddie.  Nor does it identify any particular claim that JPMC submitted, any particular representation that JPMC made, or any particular payment that JPMC received.  Instead, Jacobs' theory appears to be that JPMC's *entire servicing history* of every WaMu loan was not in compliance with Fannie and Freddie guidelines, and therefore every dollar that JPMC received that was associated with any of those loans was, by definition, fraudulently obtained.  This theory is made clear by Exhibits 2 and 3, which the FAC contends are a "representative sampling" of 14 claims "submitted by JPMC to Fannie and Freddie in connection with servicing default loans and securing foreclosure judgments throughout the United States."  *Id.* ¶ 54.  These exhibits do not identify any specific claims submitted and do not identify any specific representations made as part of a claim.  *See id.* Exs. 2-3.  Instead, they allege an aggregate dollar amount, covering a multi-year period—in many cases a *six-year period*—that allegedly captures the total amount that Fannie and Freddie paid JPMC to service and foreclose on the loans.  *Id.*  Moreover, the FAC asserts that "[t]he payments were for a variety of reasons, including payments for servicing fees, foreclosure costs, property preservation costs, asset recovery costs, expenses, and miscellaneous expenses," *id.* ¶ 54—in short, the FAC alleges that every payment that JPMC received over the entire servicing history was fraudulent.

Other than the alleged aggregate payment associated with each of these loans, the only other information about these 14 loans appears in Exhibit 1, which is the same exhibit that Jacobs attached to his prior Complaint.  *Compare id.* Ex. 1, *with* D.E. 8-1.  That exhibit consists of 40 alleged loans (from which the set of 14 representative samples in Exhibits 2 and 3 was apparently selected), and identifies basic information about those loans, including the name and location of the borrower and various dates in the life of the loan (loan note date, date of sale, date of deed, and foreclosure judgment date).  FAC Ex. 1.  It also includes the name of the WaMu official whose signature stamp allegedly appears on the loan's promissory note.  *Id.*  Other than the allegation that the signature stamp of these individuals appears on the promissory note for the

loans in Exhibit 1, the FAC contains no other allegations about those loans—there are no allegations regarding how or why Jacobs contends that these 40 notes were endorsed by JPMC instead of WaMu, there are no allegations regarding anything improper with respect to JPMC's servicing of these 40 loans, and there are no allegations regarding the foreclosures associated with them.  Instead, the entire basis on which Jacobs alleges that these loans were false is because they include an endorsement stamp bearing the signature of a WaMu official: "JPMC knew that every note with a stamp by Cynthia Riley, Jess Almanza, Brenda F. Brendle, Michele Mullholand, and Robin E. Tange was fraudulently affixed after WaMu no longer existed and after Cynthia Riley, Jess Almanza, Brenda F. Brendle, Michele Mulholland, and Robin E. Tange were no longer employed."  *Id.* ¶ 73; *see also id.* ¶ 65(e).

The FAC offers no allegations suggesting that the notes for the 40 loans in Exhibit 1 were endorsed after WaMu ceased to exist on September 25, 2008.  To the contrary, each of the 40 loans was, according to Exhibit 1, originated prior to that date, and thus each note was available to WaMu for endorsement prior to that date.  The FAC alleges nothing about the date on which any of the 40 notes were endorsed, much less alleges with particularity that the endorsements occurred after September 25, 2008.  The lack of allegations regarding the endorsement date of these 40 loans is unsurprising, as the FAC does not allege that Jacobs had any involvement with any of them.

### B.  Allegations Regarding JPMC's Supposed Fraudulent Conduct

As multiple JPMC and former WaMu officials testified in multiple foreclosure proceedings, WaMu's practice, prior to being shut down in September 2008, was for one department, headed by Barbara Hindman, to receive and image a loan's original, unendorsed promissory note, and then pass that unendorsed note on to another department, the Secondary Delivery Department, headed by Cynthia Riley, which would endorse it. FAC ¶¶ 127, 132-133. The FAC contends that Jacobs, through litigating five foreclosure cases in Florida, discovered that this testimony was false, as he allegedly "came into possession of original evidence that there was no endorsing of notes at all in the Secondary Delivery Department," *id.* ¶ 130, (meaning, apparently, that WaMu, "a savings bank holding company [that was] the largest in the U.S.A.," *id.* ¶ 46, never endorsed any of its promissory notes).

Jacobs bases this (outlandish) allegation on the fact that in two of the cases that he litigated—the *John Riley* case and the *Queen Mohammed* case—JPMC allegedly could not

produce definitive evidence showing the particular date (from years earlier) that WaMu (a different entity) had endorsed the promissory note.  *Id.* ¶¶ 118, 138.  Jacobs allegedly "discovered that JPMC refused to provide evidence because it had orchestrated a scheme with its outside counsel to perpetuate a fraud, that WaMu had a practice to image and endorse original notes using rubber-stamps within days of origination."  *Id.* ¶ 120.  As "evidence" of this fraudulent scheme, Jacobs points primarily to the deposition testimony of Barbara Hindman. According to Jacobs, Ms. Hindman, who headed the WaMu department that imaged the notes, not the department that endorsed notes, testified that she did not personally witness any WaMu employees apply endorsements stamps to notes.  *Id.* ¶¶ 128-129.  Jacobs alleges that this therefore means that WaMu did not endorse any notes, and that the deposition testimony of Cynthia Riley, who *did* head the department that endorsed notes, must be false.  *Id.* ¶ 102(e). Moreover, according to Jacobs, because Ms. Hindman never personally witnessed a WaMu official apply an endorsement stamp, then JPMC's reliance on Ms. Hindman's assertions regarding WaMu's general endorsement practices are unfounded and are further evidence of a fraudulent scheme to cover up the fact that WaMu never endorsed any promissory notes.  *Id.* ¶¶ 133, 149, 159-165, 168-169.

**ARGUMENT**

Jacobs' FAC should be dismissed with prejudice for two independent reasons.

*First*, the FAC does not state a claim for a violation of the FCA.  It does not allege, plausibly or with particularity, that JPMC submitted any false claim or made any false statement that was material to a claim.  This is because it does not adequately allege how any claim that JPMC allegedly made to Fannie or Freddie could be false, the submission of such a false claim or a specific false statement in support thereof, or JPMC's knowledge that such claims and statements were false.  These pleading failures require dismissal.

*Second*, regardless of the adequacy of Jacobs' allegations, his FAC must be dismissed pursuant to the FCA's public disclosure bar.  Public sources have long disclosed the same supposedly fraudulent conduct that Jacobs alleges in his FAC.  This Court has already taken judicial notice of two of those sources, and in connection with this motion JPMC requests judicial notice of a third source.  Because the FAC does not "materially add" any new information to the public allegation of fraud, Jacobs does not qualify as an "original source," and his FAC must therefore be dismissed.

This Court has already warned Jacobs that the FAC would be his final opportunity to amend; the dismissal should be with prejudice.

**I.      Jacobs' FAC Does Not Adequately Allege A FCA Violation**

**A.      Standard of Review**

To survive a motion to dismiss, a plaintiff's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) ("[T]he factual allegations must be enough to raise a right to relief above the speculative level").   A claim is facially plausible if the facts alleged permit the court reasonably to infer that a defendant's conduct was unlawful, but factual allegations that are "'merely consistent with' a defendant's liability" are not facially plausible.   *Iqbal*, 556 U.S. at 678. Moreover, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."   *United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 792-93 (11th Cir. 2014) (per curiam).

In addition, a complaint alleging a violation of the FCA must meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b).   *Urquilla-Diaz v. Kaplan Uni.*, 780 F.3d 1039, 1051 (11th Cir. 2015).   "[T]he Eleventh Circuit has recognized that while the requirements of Rule 9(b) may, in practice, make it difficult for a *qui tam* plaintiff to bring an action, they are necessary to prevent speculative suits against innocent actors for fraud."   *See United States ex rel. Aquino v. University of Miami*, 250 F. Supp. 3d 1319, 1327 (S.D. Fla. 2017) (quotation marks omitted).   A plaintiff must meet the particularity pleading requirement of Rule 9(b) with respect to each element of a FCA claim.   *See United States ex rel. Clausen v. Laboratory Corp. of Am. Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002).

**B.      Jacobs Has Not Adequately Alleged, Plausibly or With Particularity, That JPMC Engaged In Any Fraudulent Conduct**

Jacobs alleges that JPMC's fraudulent conduct resulted in JPMC presenting false claims to Fannie and Freddie, in violation of 31 U.S.C. § 3729(a)(1)(A), making false statements that were material to those false claims, in violation of § 3729(a)(1)(B), and making false statements material to an obligation to pay the government, in violation of § 3729(a)(1)(G).   FAC ¶¶ 213-232.   Each of these claims requires that Jacobs allege with particularity the underlying conduct

that renders any claims or statements false. *See Aquino*, 250 F. Supp. 3d at 1327 ("Underlying schemes and other wrongful activities … must be pled with particularity pursuant to Rule 9(b).").

Jacobs not only fails to allege JPMC's alleged wrongful conduct with the requisite particularity, but he also fails to allege any facts that support the central premise of his FAC— namely, that JPMC fraudulently endorsed literally every WaMu loan.  Or, to put it differently, he alleges that WaMu *never* endorsed any of its own promissory notes.  This is the central allegation of the FAC: "JPMC knew that *every note* with a stamp by Cynthia Riley [or other WaMu officials] was fraudulently affixed after WaMu no longer existed and after Cynthia Riley [and other WaMu officials] were no longer employed."  FAC ¶ 73 (emphasis added); *see also id.* ¶ 65(e).  And, indeed, there is no other basis on which Jacobs can allege that the 14 "representative example" loans are fraudulent.  The only information the FAC provides about those specific 14 loans is in Exhibit 1—but there is no information in Exhibit 1 to suggest any wrongdoing or anything out of the ordinary.  As this Court has already stated with respect to that exhibit,[3] "[T]he only information contained in [this exhibit] is a listing of loans allegedly submitted to Fannie and Freddie Mac, but there is no further detail about … why each of them qualifies as a false claim."  D.E. 49 at 7.

Therefore, Jacobs' allegation that any of these 14 claims is false necessarily depends on *every* promissory note for WaMu loans being fraudulently endorsed by JPMC.  Jacobs' allegations do not remotely suggest this conclusion.[4]  He alleges that through litigating five foreclosure cases (that did not involve any of the 40 listed loans), he discovered that JPMC could not produce evidence establishing the particular endorsement date for two WaMu notes (from the *Riley* case and the *Mohammed* case), and, further, that Barbara Hindman, the former WaMu

---

[3] Appendix A in Jacobs' prior Complaint is identical to Exhibit 1 in the FAC.

[4] There is no factual basis for this allegation—the primary allegation of the FAC.  In fact, publicly available information disproves it.  As an example, one of the loans listed in Exhibit 1 of the FAC relates to borrower Martha Farfan.  The public docket for the foreclosure case involving Ms. Farfan shows that an original copy of the promissory note, which included the signature of WaMu official Cynthia Riley, was filed on September 15, 2008.  *See* Cosgrove Decl., Ex. 1 at 21, Ex. 2 at 4.  This is ten days prior to the date that WaMu shut down, and prior to the time that JPMC acquired WaMu's residential mortgage loans.  This publicly available information—for which JPMC requests judicial notice—indisputably proves that WaMu, not JPMC, endorsed Ms. Farfan's promissory note.

employee who was in charge of the department that imaged notes, never personally witnessed WaMu officials endorsing notes.  FAC ¶ ¶ 105-139.

These allegations do not suggest that JPMC endorsed *any* WaMu promissory notes.  And they certainly do not suggest—plausibly, or with particularity, or at all—that JPMC endorsed *every* WaMu promissory note.  The fact that JPMC cannot pinpoint the precise date that WaMu endorsed the Riley and Mohammed notes does not give rise to an inference that JPMC endorsed those notes.  *See Keeler* 568 F. App'x at 792-793 ("unwarranted factual deductions … masquerading as facts will not prevent dismissal.").  Nor, under Florida foreclosure law, is JPMC required to prove such a thing.  Endorsements are presumed authentic and authorized absent evidence to the contrary, meaning that, to prove its standing to foreclose, JPMC is not required to "produce … competent evidence"—and it is certainly not required to prove the particular date that a note was endorsed.  *See* Fla. Stat. § 673.3081.  In any event, Jacobs' allegations about two particular notes of course says nothing about the hundreds of thousands of other WaMu promissory notes, many of which may in fact have definitive evidence that they were endorsed by WaMu.[5]

Nor does Ms. Hindman's testimony suggest that WaMu never endorsed any of its promissory notes.  According to Jacobs' allegations, Ms. Hindman testified that WaMu's practice was for the Secondary Delivery Department to endorse notes, FAC ¶ 127, but she never personally witnessed anyone at WaMu endorse promissory notes, *id.* ¶ 128.  That makes sense, since Ms. Hindman worked in the department that imaged the notes, not the department that endorsed the notes.  *Id.* ¶ 127.  Yet, as a result of her testimony, Jacobs somehow contends that WaMu never endorsed any promissory notes, that JPMC instead endorsed every WaMu promissory note, that every individual who testified to the contrary—including Cynthia Riley, who led the department at WaMu that endorsed notes—was lying, and that JPMC and its counsel, which "constitute a criminal enterprise," *id.* ¶ 181, orchestrated a scheme that successfully defrauded borrowers, judges, and the federal government for years.  *Id.* ¶ 175.  To state the obvious, this conclusion is not plausible based on the facts alleged.  Accordingly, Jacobs does not allege the requisite falsity necessary for a false claim, and the FAC must therefore be dismissed.

---

[5] And, indeed, as discussed *supra* note 4, there is publicly available, definitive evidence proving that one of the representative sample loans in Exhibit 1 was in fact endorsed by WaMu.

**C.     Jacobs Has Not Alleged With Particularity The Submission Of A False Claim Or A False Statement**

Jacobs' FAC should also be dismissed because he does not allege with particularity the submission of a false claim, any false statement that is material to a claim, or any false statement that is material to an obligation to pay the government.  *See Aquino*, 250 F. Supp. at 1327 (whether a relator has adequately pled the presentment of a false claim or making of a false statement "are different questions than whether the [underlying fraudulent] scheme has been sufficiently pled.").  To allege the submission of a false claim with particularity, Jacobs must "allege the who, what, where, when, and how of fraudulent submissions to the government." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (per curiam) (quotations omitted).  The same is true with respect to a false statement.  *See Mizarro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) ("[U]nder Rule 9(b) [a plaintiff must] plead the who, what, when, where, and how of the allegedly false statements.").  Moreover, Jacobs must allege: "(1) precisely what statements were made in what documents[,] … (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quotation marks omitted).

The FAC does not come close to meeting these pleading standards.  It fails to allege any particular false claim or any particular false statement.  Instead, it lists a host of requirements for servicing loans owned by Fannie and Freddie, summarily alleges that JPMC's servicing conduct violated those requirements, and then asserts that for 14 example loans every payment that JPMC received as a result of servicing those loans was fraudulently obtained.  FAC ¶¶ 9-55.  In Exhibits 2 and 3, Jacobs purports to identify the payments that JPMC received from Fannie and Freddie as a result of servicing those 14 loans, and he alleges that these exhibits "identify the actual false claims with specificity, demonstrating when each false claim was submitted, how the false claim originated, and the purpose for each false claim submitted for payment."  *Id.* ¶ 55.  But this is simply not accurate.  For instance, as to "when each false claim was submitted," Exhibits 2 and 3 do not even attempt to answer this question; to the contrary, they include the entire date range that JPMC serviced the loans, and provide the purported total amount of payments that JPMC received during that entire period.  As an example, for borrower Piconcelli, Exhibit 3 states that from July 2009 to July 2015—a six-year period of time—JPMC received

"$8,153.3592"[6] for servicing the loan.  There is no information regarding (1) the specific claims that JPMC submitted during that six-year period, (2) how much each of those claims was for, (3) what each of those claims was for, (4) the payment JPMC received as a result of each of those claims, (5) any statements JPMC made that were material to those claims, or (6) any statements that JPMC made that were material to reducing an obligation owed to Fannie and Freddie.  To the contrary, Jacobs simply contends that JPMC's entire service history is fraudulent, and that therefore every payment that JPMC received from Fannie and Freddie was fraudulently obtained.  This is the opposite of an allegation with particularity and is another ground for dismissal.

### D.      Jacobs Has Not Alleged JPMC's Knowledge

Each of Jacobs' claims under the FCA requires that he allege that JPMC acted knowingly—that is, that JPMC submitted claims for payment to Fannie and Freddie knowing that such claims were false, that JPMC knowingly made statements that were material to Fannie and Freddie's payment decision, and that JPMC knowingly made statements that were material to reducing an obligation to pay Fannie or Freddie.  *See, e.g.*, 31 U.S.C. § 3729(b)(1).  The FCA's scienter requirement is rigorous.  *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2001-2002 (2016).

As discussed above, the FAC includes no allegations regarding any fraudulent conduct related to the 14 representative loans for which JPMC allegedly made claims for payment to Fannie and Freddie, meaning that there are no allegations that JPMC had knowledge that any of these 14 loans was beset by fraud.  Thus, as is true for Jacobs' claim that JPMC engaged in fraudulent conduct, his claim that JPMC had knowledge of such conduct necessarily depends on JPMC having knowledge that its entire servicing history of *every WaMu* loan was fraudulent.  In other words, to survive this motion to dismiss, Jacobs must allege, plausibly and with particularity, that for the past 13 years (2008 to present) JPMC has knowingly engaged in "criminal misconduct" with respect to "millions of notes" that "resulted in payments to JPMC of untold millions of dollars," and did so "with the intent to defraud borrowers, state foreclosure courts, bankruptcy courts, federal regulators, Fannie Mae, Freddie Mac, and the U.S. Department of Justice in foreclosures throughout Florida and across the nation."  FAC ¶ 175.  And it

---

[6] It appears that Jacobs used some formula to determine the purported amount and failed to correct that formula to account for actual figures, because "$8,153.3592" is not an actual payment amount.

knowingly conducted this entire enterprise without the federal government, federal regulators, Fannie, Freddie, judges across the country, or any law enforcement personnel finding out about it.  The alleged facts—that JPMC could not identify the specific date that WaMu endorsed certain notes, that Barbara Hindman (who oversaw the imaging department) testified that she never personally witnessed WaMu endorsing notes, and that JPMC witnesses relied on Ms. Hindman for their understanding of WaMu's general endorsement practices—do not plausibly suggest this outcome.  The FCA should be dismissed.

## II.      The FCA's Public Disclosure Bar Requires Dismissal Of Jacobs' FAC

In FCA cases, the United States, as the alleged harmed party, is the plaintiff.  However, the FCA includes a *qui tam*, or private plaintiff, provision.  31 U.S.C. § 3730(b)(1).  Its purpose is to encourage private whistleblowers to shine a light on fraud against the federal government, and, in return, share in any "bounty" recovered by the government.  Over the years, Congress has amended the FCA multiple times in order "to strike a balance" between, on the one hand, "encouraging private persons to root out fraud," and, on the other hand, "stifling parasitic lawsuits" that could just as easily have been brought by the government.  *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 295 (2010).

The FCA's public disclosure bar, which was first added in 1986, is Congress' attempt to strike this balance.  "The reason for the public disclosure bar is fairly obvious.  Without it, opportunistic relators—with nothing new to contribute—could exploit the FCA's qui tam provisions for their personal benefit."  *United States ex rel. v. Mortgage Inv'rs. Corp., 987 F.3d 1340*, 1353 (11th Cir. 2021).  As the Supreme Court has explained, the "public disclosure bar provides 'a broad sweep.'"  *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 408 (2011).  The current version, enacted in 2010, requires courts to dismiss an action "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed," unless the *qui tam* relator is an "original source" of the information.  31 U.S.C. § 3730(e)(4)(A).

In the Eleventh Circuit, the public disclosure bar analysis proceeds in three parts, under what is known as the *Cooper* test.  *See*, *e.g.*, *United States ex rel. Osheroff v. Humana Inc*., 776 F.3d 805, 812 (11th Cir. 2015); *see also Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 565 n.4 (11th Cir. 1994) (per curiam).  Specifically, the Court asks (1) whether the allegations in the complaint have been publicly disclosed; (2) if so, whether the allegations in the

complaint are substantially the same as the allegations or transactions in the public disclosure; and, (3) if so, whether the plaintiff is an "original source" of the information. *Osheroff*, 776 F.3d at 812.

**A.      The First Two *Cooper* Factors Are Satisfied**

The first *Cooper* factor considers whether the allegations in the complaint have been publicly disclosed.  The disclosure can appear in any of the FCA's enumerated sources.  31 U.S.C. § 3730(e)(4)(A).  One such source is "news media," *id.*, and, in the Eleventh Circuit (and other circuits), "publicly available websites … qualify as news media for purposes of the public disclosure provision."  *Osheroff*, 776 F.3d at 813.  This Court has already taken judicial notice of two news media articles—"Shenanigans Abound—WAMU's Endorsement Of The Notes," and "JPMorgan Chase Quits 5 ½ Year Foreclosure Case," D.E. 48—that disclose the same allegations of fraud as in Jacobs' FAC.  Moreover, in connection with this motion, JPMC requests that the Court take judicial notice of a third news media article, "JPMorgan Chase Alert! Can JPM-Chase Validate Your Mortgage?", which appears on the same publicly available website as one of the articles that the Court has already judicially noticed.  As discussed above, this additional article provides even more details regarding JPMC's allegedly fraudulent conduct. *See supra* 5-6.

As to the second *Cooper* factor—whether the allegations in the complaint are substantially the same as the allegations in the public disclosures—this is "a quick trigger to get to the more exacting original source inquiry."  *Osheroff*, 776 F.3d at 814 (quoting *Cooper*, 19 F.3d at 568 n.10).  Here this "quick trigger" is extraordinarily simple, because there is no reasonable dispute that the allegations in the FAC are substantially the same as the allegations in these three public disclosures: that JPMC endorsed promissory notes on WaMu loans with signature stamps of WaMu officials who no longer worked at WaMu, that JPMC presented those notes in foreclosure proceedings, and that JPMC and its counsel did so knowing that the endorsements were improper.

**B.      Jacobs Is Not An "Original Source" Because The FAC Does Not "Materially Add" To The Publicly Disclosed Allegations**

If substantially similar allegations have been publicly disclosed, the final *Cooper* factor considers whether the relator is an "original source."  If not, then the case must be dismissed. The FCA identifies two requirements for an original source: first, the relator's knowledge must

be "independent of" the public allegations; second, that knowledge must "materially add[]" to those public allegations.  31 U.S.C. § 3730(e)(4)(B).  Jacobs does not qualify as an original source because he does not satisfy this second requirement—the FAC's allegations do not "materially add" to the allegations that have already been publicly disclosed.

*Osheroff*, a leading Eleventh Circuit case on the public disclosure bar, is directly on point.  There, publicly available sources disclosed that medical clinics were offering Medicaid patients meals, transportation, holiday parties, and spa services.  776 F. 3d at 813-814.  The relator—who, like Jacobs, was not a company insider—interviewed employees and patients of the medical clinic, and through doing so learned new information about the services provided.  In his *qui tam* complaint, the relator alleged that the clinics were defrauding the government, and he provided more details regarding the services offered by the clinics—the types of food, the destination of the free transportation, the frequency of the spa services, and the price of substitute services or goods.  *Id.* at 807-808.  The Eleventh Circuit, however, held that the relator was not an "original source," stating that even though the relator's complaint "includes some details that are not present in the public disclosures," thus "making it somewhat more plain that the clinics' programs could violate" the law, such information did *not* materially add to the publicly disclosed information.  *Id.* at 815.  This was because the public disclosures "*were already sufficient* to give rise to an inference that the clinics" were engaging in fraud.  *Id.* (emphasis added).

That is precisely the case here.  In fact, the three public news articles at issue provide far more detail regarding JPMC's supposed fraudulent conduct than any of the public disclosures in *Osheroff*.  In *Osheroff*, the public disclosures did not even allege any wrongdoing.  Here, by contrast, the public disclosures detail the following allegations:

- WaMu notes were fraudulently endorsed by JPMC long after WaMu ceased to exist.  More specifically, JPMC was allegedly "stamping these Washington Mutual notes with the Cynthia Riley endorsement stamp between 2012 and 2014," and there is allegedly "a file cabinet filled with foreclosure files containing Riley's stamp that weren't consummated until months or years after she left Washington Mutual."  Cosgrove Decl., Ex. 3 at 5.

- JPMC and its counsel allegedly would present unstamped promissory notes in foreclosure proceedings and would then withdraw those cases and refile them with a note bearing a

signature stamp of Cynthia Riley. *Id.* In one case, in particular, JPMC produced a promissory note with no endorsement in 2009, and then three years later, in 2012, produced a promissory note with Cynthia Riley's signature in 2012. This stamped endorsement allegedly occurred after Riley no longer worked at WaMu. D.E. 30-1 at 10-14.

- Riley is not the only former WaMu official whose signature stamp JPMC allegedly used to fraudulently endorse notes. JPMC also allegedly endorsed using the signature stamp of former WaMu official Jess Almanza. Cosgrove Decl., Ex. 3 at 5.

- The use of these fraudulently endorsed promissory notes was "a possible act of fraud on the Court in foreclosure lawsuits across America" that rendered the foreclosures invalid. D.E. 30-1 at 6. JPMC's outside counsel was part of this scheme: "[JPMC] and their lawyers know most of these mortgages are unenforceable." Cosgrove Decl., Ex. 3 at 2.

These detailed allegations of JPMC's supposedly fraudulent conduct—which, to be clear, are entirely unfounded—are more than "sufficient to give rise to an inference" of fraud. *See Osheroff*, 776 F. at 815.

Moreover, there is near complete overlap between these allegations and the information that Jacobs allegedly "acquired first-hand," which he claims makes him an original source. *See* FAC ¶ 102. At most, the FAC provides additional details regarding JPMC's alleged fraud (and even that is arguable). But the law is abundantly clear that when public disclosures are already sufficient to give rise to an inference of fraud, "background information and details … making it somewhat more plain" that fraudulent conduct occurred does not materially add to those public disclosures. *Osheroff*, 776 F.3d at 815; *see also United States ex rel. Bernier v. InfiLaw Corp.*, 311 F. Supp. 3d 1288, 1297 (M.D. Fla. 2018) (relator's allegations did not materially add when public disclosures were "already sufficient to give rise to an inference that Defendants were defrauding the Government") (quotation marks omitted); *United States ex rel. Gilbert v. Virginia Coll., LLC*, 305 F. Supp. 3d 1315, 1325-1326 (N.D. Ala. 2018) (when a prior disclosure contained allegations concerning the defendant college's alleged grade inflation and falsification of reports, the relator's allegations did not "materially add" even though they concerned a "different time period and at a different campus"); *United States ex rel. Payton v. Pediatric Servs. of Am., Inc.*, 2017 WL 3910434 at *8 (S.D. Ga. Sept. 6, 2017) ("Finally, the information Relator provides is not material. Generally, an amended complaint is not material where the

previous public disclosures already revealed 'the essential elements comprising the fraudulent transaction … so as to raise a reasonable inference of fraud.'").  Therefore, because the FAC does not materially add to the publicly disclosed information, Jacobs does not qualify as an original source, and the FAC must be dismissed.[7]

## CONCLUSION

For the reasons discussed above, Jacobs' FAC should be dismissed with prejudice.

---

[7] Jacobs also contends that he is an original source because he "discovered" that JPMC services loans sold to Fannie and Freddie and that JPMC received payments as a result of servicing such loans.  FAC ¶¶ 171-174, 193.  This allegation is nonsensical.  It is obvious, public information that JPMC services loans on behalf of Fannie and Freddie.  And, in any event, a relator does not "materially add" to the public disclosures by merely alleging that the conduct at issue serves as the basis for a FCA claim.  *See United States ex rel. Lorona v. Infilaw Corp.*, 2019 WL 3778389 (M.D. Fla. 2019) ("Relator's allegations do no more than repackage what was already known about the [defendants'] practices into the framework of the FCA, [and] this is insufficient to satisfy the materiality standard.").

**<u>Request for Hearing</u>**

   Defendant JPMC respectfully requests that this Court hold oral argument on this motion to dismiss.  The FAC purports to allege that JPMC defrauded the United States government with respect to every single WaMu loan.  This is a serious allegation, and JPMC would appreciate the opportunity to further explain why the FAC must be dismissed.

Date: April 15, 2021

Respectfully submitted,

**Scott B. Cosgrove**
Florida Bar No. 161365
Andrew B. Boese
Florida Bar No. 824771
Benjamin Weinberg
Florida Bar No. 615519
LEÓN COSGROVE, LLP
255 Alhambra Circle, 8th Floor
Miami, FL  33134
Telephone:  305-740-1975
Facsimile:  305-437-8158
Email: scosgrove@leoncosgrove.com
Email:  anoonan@leoncosgrove.com

Matthew T. Martens (pro hac vice)
WILMER CUTLER PICKERING
HALE & DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone:  202-663-6921
Facsimile:  202-663-6000
Email: Matthew.Martens@wilmerhale.com

Alan E. Schoenfeld (pro hac vice)
WILMER CUTLER PICKERING
HALE & DORR LLP
250 Greenwich Street
New York, NY  10007
Telephone:  212-937-7294
Facsimile:  212-230-8888
Email: Alan.Schoenfeld@wilmerhale.com

*Attorneys for Defendant*